FILED

2009 Nov-20  AM 08:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **BOBBY WAYNE DUTTON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 08-S-02163-NW** |
| | ) | |
| **ADAM LENTZ and** | ) | |
| **BRANDON HOOD,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This action arises out of the November 19, 2006 arrest of plaintiff, Bobby Wayne Dutton, for interfering with governmental operations and resisting arrest.[1] Plaintiff sues defendants Adam Lentz and Brandon Hood, both of whom are Deputy Sheriffs for Lawrence County, Alabama.[2]  Plaintiff alleges under 42 U.S.C. § 1983 that:  Deputy Lentz employed excessive force when arresting him, in violation of the Fourth and Fourteenth Amendments to the United States Constitution (Count I);[3] Deputy Hood had a duty to intervene to protect plaintiff from co-defendant Lentz's constitutional violations, but failed to do so (also Count I);[4]  and, plaintiff was falsely arrested, in violation of the Fourth and Fourteenth Amendments (Count II).[5]  The case

---

[1] *See* doc. no. 19 (amended complaint), ¶¶ 4, 27.

[2] *Id.* ¶¶ 2-3.

[3] *Id.* ¶¶ 31-33.

[4] *Id.* ¶ 32.

[5] *Id.* ¶¶ 34-35.

presently is before the court on defendants' motions to dismiss.[6]  Upon consideration of the pleadings, briefs, and oral arguments of counsel, the court finds that defendants' motions are due to be granted in part and denied in part.

## I.  STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b) authorizes the dismissal of a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "There are two other provisions of Rule 8 that are pertinent:  'Each averment of a pleading shall be simple, concise, and direct.  No technical forms of pleading are required.'  Fed. R. Civ. P. 8(e)(1); and 'All pleadings shall be so construed as to do substantial justice.' Fed. R. Civ. P. 8(f)."  *Gorski v. New Hampshire Dept. of Corrections*, 290 F.3d 466, 473 n.5 (1st Cir. 2002).  *See also Conley v. Gibson*, 355 U.S. 41, 47-48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").  While such pleading standards do not require "detailed factual allegations," *Bell Atlantic Corp.*

---

[6] *See* doc. nos. 20 (defendant Lentz's motion to dismiss), and 22 (defendant Hood's motion to dismiss).

*v. Twombly*, 544 U.S. 544, 550 (2007), they do demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (citations omitted).

In addition, more detail is required when claims against county law-enforcement officers are based upon 42 U.S.C. § 1983.

> [W]hile Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing [his, her, or] its complaint, this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out [his, her, or] its claim. Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right.

*GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998) (citations omitted).

## II. ALLEGATIONS OF PLAINTIFF'S COMPLAINT

When, as in the present case, county law-enforcement officers seek the dismissal of § 1983 claims on the basis of the affirmative defense of "qualified immunity," the court is required to answer the legal question of whether the officers are entitled to immunity under *the plaintiff's* version of the facts. *See*, *e.g.*, *Saucier v. Katz*, 533 U.S. 204, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider . . . this threshold question: *Taken in the light most*

*favorable to the party asserting the injury*, do the facts alleged show the officer's conduct violated a constitutional right?") (emphasis supplied). Accordingly, while the following statements may not be the actual facts of this case, they either are alleged in the amended complaint, or are statements that may be reasonably inferred from the allegations contained within the four corners of that pleading.

Shortly after midnight on November 19, 2006, Bobby Wayne Dutton and his wife, Pat Dutton, noticed that, on the road outside their home, law-enforcement patrol cars were stopped behind a vehicle driven by their son, Todd Dutton. Mr. and Mrs. Dutton walked across the road to investigate.[7] Defendant Lawrence County Deputy Sheriff Adam Lentz stopped them as they approached, and asked who they were and what they needed. Plaintiff responded that he and his wife were Todd Dutton's parents, and wanted to see what was happening.[8] Deputy Lentz asked where plaintiff and his wife lived and, when told that they lived across the road, Lentz told them they needed to go back home.[9]

Initially, plaintiff and his wife complied with Deputy Lentz's instruction; but, after taking a step or two in the direction of their home, plaintiff turned around and asked whether Lentz was saying that he did not have a right to ask why his son had

---

[7] *See* doc. no. 19 (amended complaint), ¶ 4.

[8] *Id.* ¶ 5.

[9] *Id.* ¶ 6.

4

been stopped by the law-enforcement officers.[10]   Plaintiff's amended complaint

continues the narrative of events as follows:

> 8.    Rather than answer the question and despite no action by plaintiff justifying any force, Lentz pushed plaintiff backwards hard with both of his hands, causing plaintiff to stumble.

> 9.    After regaining his balance, plaintiff took one step toward Lentz.

> 10.    Plaintiff was unarmed and did not by gesture or by word threaten Lentz at any time.

> 11.    Plaintiff used no profanity and did not yell or scream.

> 12.    Plaintiff was and is in poor health. He has heart problems, has had cancer, and suffered a stroke.

> 13.    Plaintiff was 56 years old at the time of the incident but appeared much older because of his health problems.

> 14.    Plaintiff would appear to a reasonable officer to be a person in poor health.

> 15.    Lentz, now assisted by Deputy Hood and another law enforcement officer, pushed plaintiff to the ground.

> 16.    The three officers surrounded plaintiff.

> 17.    At this time both Todd Dutton and Pat Dutton told the officers about plaintiff's health problems and complained that plaintiff had done nothing to justify this treatment.

> 18.    While plaintiff was flat on his back surrounded by the officers, prior to plaintiff's being told he was under arrest or any attempt

---

[10] *Id.* ¶ 7.

to cuff plaintiff, for no legitimate reason and without warning, Lentz, while the other officers just watched, shot a taser probe into plaintiff and applied an electrical shock to plaintiff's body.

19.    No purpose was served by tasing plaintiff other than the infliction of pain.

20.    Len[t]z shot plaintiff solely . . . because plaintiff talked back to him and not for any lawful reason.

21.    Before Lentz shot the taser probe into plaintiff, Pat Dutton asked Lentz why he was pointing a gun at her husband since he had done nothing wrong.

22.    Lentz did not answer Pat Dutton before firing the taser at plaintiff.

23.    After Lentz tased plaintiff, Todd Dutton and Pat Dutton continued to tell the officers about plaintiff's health problems and to beg them to stop.

24.    Rather than stop, Lentz tased plaintiff a second time.

. . . .

26.    Lentz and Hood arrested plaintiff.

27.    Lentz and Hood charged plaintiff with interfering with governmental operations and resisting arrest, but the charges were dismissed.

28.    Lentz did not have probable cause to arrest plaintiff. He did not curse, yell, or scream. He did not interfere with any governmental operation. He did not refuse to obey a lawful order. He did not resist arrest. He gave no indication in his actions or words that he was anything other than a concerned parent. He merely asked a question about his rights, which is not a crime and which is protected First Amendment speech.

29. Hood had the opportunity to prevent Lentz from tasing plaintiff but did not do so even though he knew there was no justification for the tasing.[11]

As a result of Deputy Lentz's actions, plaintiff suffered pain and injuries that required two hospitalizations, the second one for trauma-induced pneumonia.[12]

## III. DISCUSSION

Qualified immunity is an affirmative defense, and it provides complete protection for governmental officials whose discretionary acts violate "no clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also*, *e.g.*, *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (same). The public policy purpose undergirding the defense is that of allowing public officials to perform discretionary functions without the fear of personal liability or harassing litigation. *See*, *e.g.*, *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). In order to be entitled to this immunity from suit and damages, therefore, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. If the defendant was not acting within his discretionary authority, he is ineligible for the benefit of qualified immunity." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.

---

[11] Doc. no. 19 (amended complaint), at 2-4.

[12] *Id.* ¶ 25, at 4.

7

2002) (citations and internal quotation marks omitted).  Plaintiff does not dispute that both defendants were acting within the scope of their discretionary authority. Consequently, the burden shifts to plaintiff to demonstrate that qualified immunity is not appropriate by showing the deprivation of a federal constitutional or statutory right that was clearly established at the time of the official's action.  *See*, *e.g.*, *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991).

The Supreme Court prescribed a two-part analytical-framework for determining whether a public official is entitled to the protections of qualified immunity in *Saucier v. Katz*, 533 U.S. 194 (2001);[13] *see also*, *e.g.*, *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (recognizing that this Circuit generally follows *Saucier's* two-part test when "analyzing the applicability of qualified immunity").  Under that test, the "threshold question" that must be asked is whether the facts, viewed "in the light most favorable to the party asserting the injury," show that "the officer's conduct violated a constitutional right?"  *Id*. at 201.  If that question is answered affirmatively, the court may proceed to determine whether that right was "clearly established" at the time of the violation.  *Id*.

---

[13] The Supreme Court recently relieved lower courts from mandatory adherence to the order of the two-part *Saucier* test.  *See Pearson v. Callahan*, — U.S. —, 129 S. Ct. 808, 818 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.").  Even so, under the circumstances of this case, in which the initial issue in dispute is the question of whether there is a Constitutional basis for plaintiff's claim, the analytical sequence recommended in *Saucier* will be followed.

**A.**   *Plaintiff's Fourth Amendment Excessive Force Claim*

Plaintiff contends that Deputy Lentz employed excessive force in violation of the Fourth and Fourteenth Amendments by twice shocking him with a Taser.[14]   The Supreme Court has held, however, that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."   *Graham v. Connor*, 490 U.S. 386, 397 (1989).   Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation."   *Id*. at 396-97.   For those reasons, a claim of excessive force is analyzed under the Forth Amendment's "objective reasonableness" standard.   *Id.* at 388.

---

[14]   Deputy Hood interprets the complaint to allege separate claims for false arrest and excessive force under the Fourteenth Amendment, as distinct from (and in addition to) the Fourth Amendment.   *See* doc. no. 23 ("Memorandum Brief in Support of Defendant Brandon Hood's Motion to Dismiss Plaintiff's First Amended Complaint") at 18 (**hereafter, "Deputy Hood's Brief"**).   However, this court interprets plaintiff's Fourteenth Amendment allegations simply as references to the fact that the Fourth Amendment is applied to state actors by incorporation through the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643 (1961) (finalizing the incorporation of the Fourth Amendment into the Due Process Clause of the Fourteenth Amendment and, thereby, applying its protections to the states).   The court's explanation is consistent with plaintiff's failure to address the issue in his response to Deputy Hood's motion requesting the court to dismiss the "phantom" Fourteenth Amendment claims.   *See* doc. no. 27 ("Plaintiff's Response to Defendant Hood's Motion to Dismiss First Amended Complaint") (**hereafter, "Plaintiff's Response to Deputy Hood"**).

Even if Deputy Hood's misinterpretation of plaintiff's allegations were correct, which it is not, this court would hold that plaintiff had abandoned his Fourteenth Amendment claims because he did not address them in his brief opposing dismissal.   Issues and contentions not raised in a party's brief are deemed to have been abandoned.   *See, e.g., Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

> In order to determine whether the use of force is "objectively reasonable," we carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing governmental interests at stake" under the facts of the particular case. [*Graham*, 490 U.S.] at 396, 109 S.Ct. 1865 (internal citations and quotations omitted). We measure the quantum of force employed against these factors — the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Lee* [*v. Ferraro*], 284 F.3d [1188, 1197-98 (11th Cir. 2002)].

*Oliver v. Fiorino*, — F.3d —, 2009 WL 3417869, at *5 (11th Cir. Oct. 26, 2009) (alteration supplied), *affirming Oliver v. City of Orlando*, 574 F. Supp. 2d 1279 (M.D. Fla. 2008).

Two Eleventh Circuit cases have addressed excessive force claims in the context of the use of a Taser by law-enforcement officers. Most recently, in *Oliver v. Fiorino*, *supra*, the Court found that a struggle between an officer and a possibly mentally-ill suspect arguably placed both in danger and, therefore, "the use of an *initial, single Taser* shock to calm the suspect *may* have been justified." *Oliver*, 2009 WL 3417869, at *6 (emphasis supplied). However, the Court went on to hold that the repeated use of a Taser while the suspect was lying on the ground and not resisting arrest was unreasonable and excessive. *Id.* at *7. In like manner, the Eleventh Circuit held in *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004), that, when a deputy sheriff used a single Taser shock against a "hostile, belligerent, and

10

uncooperative" suspect who "used profanity, moved around and paced in agitation, and repeatedly yelled at" the deputy, the force used was proportionate and reasonable. *Id.* at 1278.

In contrast, this court finds that the application of two Taser shocks under the circumstances alleged by plaintiff — who was on the ground, lying flat on his back, surrounded by three armed law-enforcement officers, and was not yelling, screaming, cursing, or physically evidencing any intent to resist the officers — was grossly disproportionate to any threat posed, and wholly unreasonable. *See Oliver*, 2009 WL 3417869, at *7.

The crimes at issue were not severe.  Plaintiff was charged with interfering with governmental operations and resisting arrest.  Those charges could be predicated upon only three acts by plaintiff: (1) failing to *immediately* obey Deputy Lentz's instruction to leave the scene; (2) questioning Deputy Lentz regarding his rights; and (3) taking a step toward Deputy Lentz after being shoved.  However, those acts do not evidence serious, violent crimes demanding a harsh response.

Even assuming that Deputy Lentz reasonably perceived plaintiff to be a threat when he took a step toward Lentz, after being pushed and regaining his balance,[15] any danger dissipated once plaintiff was on the ground, sprawled on his back, surrounded

---

[15] *See* doc. no. 19 (amended complaint) ¶¶ 8-9.

by three armed, law-enforcement officers.  Moreover, plaintiff alleges that he was obviously unhealthy, he was unarmed, and he did not "by gesture or by word threaten" the officers.[16]

Further, and despite the fact that Deputy Lentz *charged* plaintiff with resisting arrest, the facts alleged by plaintiff do not demonstrate that he "actively resisted arrest or attempted to evade arrest by flight."  *Oliver*, 2009 WL 3417869, at *5.  Indeed, neither Deputy Lentz nor any other officer present informed plaintiff that he was under arrest prior to inflicting two Taser shocks.

Defendants hang their hats on a third case, *Zivojinovich v. Barner*, 525 F.3d 1059 (11th Cir. 2008), as justification for Lentz's use of two Taser shots.  In that case, the arrestee's nose was broken in a struggle with law enforcement officers who were attempting to arrest him.  *Id.* at 1064-65.  After being subdued, and while standing in handcuffs, the suspect unintentionally sprayed the deputies with blood that spewed from his broken nose.  *Id.* at 1065.  In response, the defendant and another officer who was not a party to the suit each discharged their respective Tasers into the arrestee.  *Id.* at 1065.  When approving the use of Taser force under those circumstances, the Eleventh Circuit said:

> We have previously held that in a "difficult, tense and uncertain situation" the use of a taser gun to subdue a suspect who has repeatedly

---

[16] *Id.* ¶ 10.

> ignored police instructions and continues to act belligerently toward
> police is not excessive force. *Draper v. Reynolds*, 369 F.3d 1270, 1278
> (11th Cir. 2004). This was such a situation, and we conclude that [the
> defendant's] use of his taser was reasonably proportionate to the need
> for force.

*Id.* at 1073.[17] It should be obvious to even a first-semester law student, however, that

the facts of *Zivonjinovich* are vastly different from the facts of this case. *See id.* at

1062-66. Alex Zivonjinovich acted belligerently, repeatedly failed to heed officers'

instructions, and physically struggled with the officers. Those circumstances

combined to create a situation totally unlike the one confronted by Deputy Lentz.

In the opinion of this court, Deputy Lentz's first Taser shot was not justifiable

under the facts alleged by plaintiff. But even if that is not a correct conclusion, the

second Taser shot unquestionably was "excessive, disproportionate, and a violation

of [plaintiff's] rights under the Fourth Amendment." *Oliver v. City of Orlando*, 574

F. Supp. 2d at 1286. Unlike the facts in *Oliver*, where the first, and only justifiable,

Taser shot was used to force an upright, struggling suspect to the ground, the plaintiff

in the present case was already on the ground and surrounded when the first shot was

fired.

Proceeding to the second stage of qualified immunity analysis, "[f]or a

constitutional right to be clearly established the contours of the right must be

---

[17] Significantly, the Court only addressed the defendant officer's use of a Taser, not the
second officer's use of a Taser, or the constitutional impact of the two Tasers being utilized in
concert.

sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Bates v. Harvey*, 518 F.3d 1233, 1247-48 (11th Cir. 2008) (internal quotation marks and citation omitted). The law may provide an officer "fair and clear notice" that his conduct is unconstitutional in three ways:

> First, the case may be one of "obvious clarity" — the officer's conduct will "lie[ ] so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law" on point. *Vinyard* [*v. Wilson*], 311 F.3d [1340, 1350 (11th Cir. 2002)] (citations omitted). Second, "where the conduct is not so egregious as to violate, for example, the Fourth Amendment on its face," the court turns to case law to look for a broad statement of principle that a particular type of conduct was unconstitutional (without linking that conduct to a specific set of facts). *Id.* at 1351. And finally, in the absence of case law determining that a particular type of conduct was unconstitutional, the court looks at precedent that is tied to the facts. *Id.*

*McNally v. Eve*, No. 8:06-CV-2310-T-23EAJ, 2008 WL 1931317, at *9 (M.D. Fla. May 2, 2008) (internal footnote omitted).

"No decision from the United States Supreme Court, or from this Court, or from the [Alabama] Supreme Court, has clearly established that an officer's repeated use of a Taser constituted excessive force under circumstances like these." *Oliver v. Fiorino*, 2009 WL 3417869, at *7.[18] "The question then boils down to this: whether it would be clear to every reasonable officer, even in the absence of case law, that the

---

[18] Because *Oliver* was decided nearly three years after the events in question here, it, of course, could not have provided "fair and clear notice" to Deputies Lentz and Hood, even if the facts were identical, which they are not.

force used" — two Taser shots, discharged without warning while plaintiff was lying flat on his back, surrounded by three armed officers, and was not attempting to rise or resist arrest — "was excessive under the circumstances." *Id.*

The court concludes that "the force employed was so utterly disproportionate to the level of force reasonably necessary that any reasonable officer would have recognized that his actions were unlawful." *Id.* at *8. Indeed, the need for force under the facts alleged by plaintiff was *nonexistent.* Plaintiff was not resisting arrest, but was lying on his back, exposed and helpless, surrounded by armed officers, and he was neither suspected of nor charged with a serious or violent crime. "Under these circumstances, any reasonable officer would have known that the amount of force used against [plaintiff] was excessive and, therefore, unconstitutional." *Oliver v. City of Orlando*, 574 F. Supp. 2d at 1287.

**B.**   *Plaintiff's Duty to Intervene Claim*

The law is well settled that, "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986), *abrogation on other grounds recognized by Nolen v. Isbell*, 207 F.3d 1253, 1255-56 (11th Cir. 2000).

Before a duty to intervene arises, however, two conditions precedent must be

satisfied.   First, there must be an underlying constitutional violation requiring intervention.  *See Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009) (holding that the "failure to intervene" claim against the second officer must fail because the first officer did not commit a constitutional violation); *Sanders v. City of Union Springs*, 207 Fed.Appx. 960, 966 (11th Cir. 2006) ("[G]iven that the plaintiffs are unable to establish a constitutional violation, their claim for failure to intervene must fail.").

Second, the officer must be in a position to intervene and have the opportunity to do so.  *See Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir. 1998) ("[I]n order for an officer to be liable for failing to stop police brutality, the officer must be 'in a position to intervene.'") (quoting *Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996)); *Riley*, 94 F.3d at 635 (holding that an officer who was engaged in arresting a suspect, and who did not observe his fellow officer's use of excessive force on a second suspect, did not have a duty to intervene).

As discussed above, Deputy Lentz violated plaintiff's Fourth Amendment right to be free from the use of excessive force when effecting his arrest. Thus, Deputy Hood had a duty to prevent the violation of that right, if he was in a position to do so.

Deputy Hood argues that he was not in a position to forestall Deputy Lentz, saying: "Assuming, *arguendo*, that Deputy Hood knew Deputy Lentz had drawn his

TASER and trained it on the Plaintiff, there would have been no way under the facts alleged for Deputy Hood to know that Deputy Lentz was going to fire absent an ability to read minds."[19]  That dog will not hunt.

Plaintiff has alleged that he was surrounded by Deputies Lentz and Hood and another, unidentified "law enforcement officer" when Lentz drew his Taser. Although it is possible that Deputy Hood believed that Deputy Lentz aimed his Taser at plaintiff simply to "cover" him, until plaintiff could be handcuffed, as soon as Deputy Lentz discharged his weapon into plaintiff the first time, Hood clearly should have known otherwise.  Consequently, when Lentz trained his Taser on plaintiff for a second shot, Deputy Hood came under a duty to intervene.  Any other conclusion would allow a nonparticipatory officer to absolve himself of responsibility for constitutional violations by simply claiming he did not *know* that his fellow officer would pull the trigger *again*, after the first shot.[20]

Based on the allegations of the complaint, the court concludes that Deputy Hood had an opportunity to prevent the second Taser shot, but failed to do so. Furthermore, because the duty to intervene in the context of an excessive force claim has been clearly established,  *see Priester v. City of Riviera Beach*, 208 F.3d 919, 927

---

[19] Doc. no. 23 (Deputy Hood's Brief), at 11.

[20] In *Oliver*, the Eleventh Circuit treated the participatory and nonparticipatory officer as equally responsible for the multiple Taser shots, without even mentioning the duty to intervene, presumably concluding that it did not warrant discussion. *See Oliver*, 2009 WL 3417869, at *8.

(11th Cir. 2000), Deputy Hood is not shielded by qualified immunity.

**C.**   *Plaintiff's False Arrest Claim*

Count II of the Complaint alleges that plaintiff was deprived of his Fourth and Fourteenth Amendment rights to be free from unlawful seizure when he was arrested for obstructing governmental operations and resisting arrest. *See* Ala. Code §§ 13A-10-2, 13A-10-41 (1975) (2005 Replacement Vol.).[21]

In order to overcome the defendants' assertion of qualified immunity, plaintiff must demonstrate that his arrest was unconstitutional, because it was made without probable cause. *See Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) ("The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause.").  An arrest is made *with* probable cause "when the facts and circumstances within the officer's

---

[21] The first statute cited in text provides that:

    (a)    A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he:
        (1)    Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or
        (2)    Intentionally prevents a public servant from performing a governmental function.
    (b)    This section does not apply to the obstruction, impairment or hindrance of the making of an arrest.
    (c)    Obstructing governmental operations is a Class A misdemeanor.

Ala. Code § 13A-10-2 (1975) (2005 Replacement Vol.).  Under Alabama law, a person commits the Class B misdemeanor of resisting arrest "if he intentionally prevents or attempts to prevent a peace officer from affecting a lawful arrest of himself or of another person." Ala. Code § 13A-10-41(a).

knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks and citations omitted).

Even when officers make an arrest without probable cause, they still are entitled to the protection of qualified immunity "if there was *arguable* probable cause for the arrest." *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003) (emphasis supplied). "Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Id.*

Plaintiff's allegations of fact, even cast in the light most favorable to him, support the conclusion that defendants had arguable probable cause to arrest him for obstructing governmental operations. When Deputy Lentz observed plaintiff approaching the scene where Todd Dutton had been stopped, he ordered plaintiff to withdraw. Plaintiff did not fully comply with Deputy Lentz's directive. Instead, he questioned Lentz which, undoubtedly, distracted the officer from his investigation of plaintiff's son.[22] Deputy Lentz then shoved plaintiff away. Plaintiff still did not retreat from the scene. Instead, after regaining his balance, he "took one step toward

---

[22] The amended complaint does not does not explain why the law-enforcement officers were "pulled in behind the car being driven by their son." *See* doc. no. 19 (amended complaint), ¶4.

Lentz."[23]   In other words, plaintiff advanced on a deputy who had ordered him to leave the scene of an ongoing investigation, and who had just physically pushed him away.  Those events gave defendants arguable probable cause to arrest plaintiff for the crime of obstructing governmental operations.  Under Alabama law, an individual is guilty of that offense "if, by means of intimidation, physical force *or interference* . . . he . . . [i]ntentionally prevents a public servant from performing a governmental function."  Ala. Code § 13A-10-2(a)(2) (emphasis supplied).  Even viewing the facts in the light most favorable to plaintiff, he interfered with the investigation of his son when he refused to leave the scene after being directed to do so.

Plaintiff argues that he attempted only to speak to Deputy Lentz, and that such action was not criminal.  In raising this point, plaintiff relies on an unsubstantiated conclusion: that "words alone . . . cannot constitute interfering with governmental operations."[24]  The court generally will not give consideration to arguments that are not fully developed or bolstered with legal authority.  *See*, *e.g.*, *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a party's "perfunctory and underdeveloped argument") (citing *Flanigan's Enterprises, Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that "fail[ure] to

---

[23] *Id.* ¶ 9.

[24] Doc. no. 24 ("Plaintiff's Response to Defendant Lentz's Motion to Dismiss First Amended Complaint"), at 9  (**hereafter, "Plaintiff's Response to Deputy Lentz"**).

elaborate or provide any citation of authority in support [of an argument]" results in waiver)).  However, even assuming that plaintiff's statement of the law is correct, the allegations of fact render plaintiff's interpretation of the statute irrelevant.  The facts, as plaintiff alleges them to be, show that plaintiff did *physically* advance toward Deputy Lentz after having been orally directed and shoved away.

Plaintiff also argues that probable cause was not present because plaintiff lacked the requisite intent to commit the offense of obstruction.  A reasonable officer could conclude otherwise.  Plaintiff failed to leave the scene after being ordered to do so.  Once plaintiff took a step toward Deputy Lentz, who had just pushed him away from the scene of an ongoing investigation, it was reasonable for defendants to infer that plaintiff intended to interfere.  At a minimum, plaintiff's actions gave defendants arguable probable cause to arrest him for the crime of obstructing governmental operations.  As such, the arrest was lawful, and no violation of plaintiff's constitutional rights occurred.[25]

Because the evidence does not support a claim that defendants lacked probable cause for the arrest, the court need not proceed to the second stage of the qualified

---

[25] Because the arrest was lawful based on the suspected violation of Ala. Code § 13A-10-2, the violation of Ala. Code § 13A-10-41 need not be addressed.  *See Angeline v. City of Hoover*, 2009 WL 3646082, *3 (11th Cir. Nov. 5, 2009) ("[F]or an officer to be entitled to qualified immunity, he must have probable cause or arguable probable cause for *at least one* of the crimes that a suspect could be charged with before making an arrest."(emphasis in original)) (citing *Skop v. City of Atlanta*, 485 F .3d 1130, 1137-38 (11th Cir.2007).

immunity analysis, *i.e.*, whether defendants violated clearly established law.  *See Zivojinovich v. Barner*, 525 F.3d 1059, 1072-73 (11th Cir. 2008) ("Because we conclude that there was no . . . violation, we need not address the second prong of the qualified immunity analysis.").  Defendants are entitled to qualified immunity as to plaintiff's false arrest claim.

## IV.  CONCLUSION AND ORDER

In accordance with the foregoing, plaintiff's false arrest claim against defendants Lentz and Hood, together with any independent Fourteenth Amendment claims asserted by plaintiff, [26] are DISMISSED, and defendants' motions to that end are GRANTED.  Defendants' motions to dismiss plaintiff's excessive force and duty to intervene claims are DENIED.

DONE and ORDERED this 19th day of November, 2009.

_____
United States District Judge

---

[26] *See* footnote 14, *supra*.

22